Good morning, Your Honor. My name is James Wood. I represent the appellant defendant in this case. The very first sentence in the appellee's brief begins with, In order to defeat a motion for summary judgment, the nonmoving party must present evidence which demonstrates the existence of genuine issues of material fact. Now, as a general rule, that's probably true. But as a threshold before that is true, it is necessary for the moving party to present evidence addressing all of the material issues and ultimately showing that there is evidence supporting all such material issues. In this case, the defendant did not present affidavits specifically seeking to rebut the evidence submitted that is material on many issues. However, the evidence submitted by the plaintiff itself in connection with the motion for summary judgment contained evidence that was either inadmissible in many respects or evidenced the existence of a genuine issue of material fact in various respects. Are you talking about the $355,000 payment or are you talking more generally? I'm speaking more generally. I'm referring specifically to the existence of the Ponzi scheme and to the fact that specific payments were or were not made. With respect to the issue of whether or not there was a Ponzi scheme, for example, we believe that there was little or no admissible evidence establishing such a thing. Very specifically, the Court apparently relied upon prior determinations made in other civil actions relating to the same general circumstances in finding that there was a Ponzi scheme in this case. And, in fact, the appellee plaintiff asks this Court to give deference to the trial court on such findings even though there was no trial. And this is a finding on summary judgment in this case. In other words, the trial court in this case improperly imported findings from other actions that involved similar parties without a trial in this case. I think that's perhaps the most obvious problem with the Court's determination that there was a Ponzi scheme in the first place. There's simply no admissible evidence in the record in this case establishing that. And from the very beginning, the defendant challenged the admissibility of the declaration submitted by the officer of the plaintiff. And so that issue has been raised from the very beginning in this case. So, I'm sorry, go ahead. What about the Arnold affidavit? That's the affidavit I'm referring to. And that, in your view, is insufficient? It's insufficient because, partly because it contains numerous statements that are not admissible, were not within the actual knowledge of Mr. Arnold. And that was, and that issue was raised in the initial opposition to the summary judgment. The argument that most, if not many, or all of the assertions made by Mr. Arnold were not within his personal knowledge, were not based upon a foundation properly laid or business records or so on. And that's, those issues were all raised. So part of the question is the existence of the. Can I just interrupt you for a moment? I have a note that as admitted that UDI was insolvent when OUSA made the loans to it, and that 90 percent of UDI's losses were due to the interest payments UDI was making on its loans, and that UDI's primary source of capital was loan proceeds. So it seemed like your client had conceded a number of these points that went to the insolvency of UDI. And the main argument that I saw from your briefs was that there had to be evidence that the repayments to OUSA were made on funds that were received by subsequent investors. And on that point, I didn't really see any legal support. Are you changing your theory on that, or? I don't think that's the main argument. I think that that was one of the contentions that was made in the briefs, but I do not believe that's the main argument. The main argument is that there was not evidence in the record in the first place from the plaintiffs to support a summary judgment to establish the case at the inception that was admissible in any way. For example, I've already spoken briefly about the lack of evidence concerning the general existence of the Ponzi scheme. But more specifically, with respect to the funds that were allegedly transferred to the defendants in this case, there is a — the vast majority of the disputed amount is attributable to a single transaction where it is alleged that a payment of either $330,000 or $355,000 was made to the defendants. Whereas — Well, let me tell you the problem I'm having on this one. It's kind of a problem with both sides because there's a little bit of a shifting sand, vague story on the $355,000 versus the $330,000 from UDI. But they offer up an explanation, an entry of receipt, et cetera. And then OZA doesn't do anything to say otherwise. So how does that shake out on summary judgment? Well, first of all, I don't think that the $330,000 deposit slip or the book entry that is apparently the basis for the plaintiff's case in this is properly before the court, was properly before the lower court. In either instance, there isn't any authentication — I don't believe there's any authentication of either of the transactions, so we know what they are. And essentially, what I believe the plaintiff is saying is making an extravagant inference. All we have is a deposit slip indicating that on a date widely different than the date they allege the transaction occurred, an amount of money was deposited into the defendant's bank account. That's all there is that connects it. Now, they're arguing from one of the documents in the record that the reason that the arrangements — and they refer to a particular document which says that there was a $250,000 principal adjustment. How do you explain that document and that entry if it's not relating to taxes? I don't know what it's related to, but I think that it's an extravagant inference to try and connect them in that way. The defendants didn't have the records that would have explained that. The records come from UDI, that is to say the records of the transactions on the UDI side of it. So I think that the essence of it is that there are any number of speculative answers you could come up with. You could say it's related to an entirely different transaction that we might not know about. We don't have anything in the record that connects it other than just somebody throwing out the possible inference that they're connected in some way. But what about, you know, looking at a transaction receipt for $330,000, Bank One transaction receipt, what is the frailty of that evidence? The frailty of that is that it's not connected in any way to UDI. The fact that all it shows is that there was a $330,000 deposit into the defendant's bank account doesn't say where it came from. That deposit slip didn't come from UDI. There isn't anything on it or anything that connects it in any way to the alleged payment that is the basis for all of this. Did you want to save time for rebuttal? Yes. Yes, Your Honor. Thank you. Good morning, Your Honors. I'm Rod Coffey on behalf of United Development, Inc., the Apple League in this case. Could we start where we finished? Certainly. And that's on the $330,000 receipt. It says, well, yeah, this is a nice deposit receipt, but it's not connected to UDI. What is your response to that argument? The $330,000 receipt is a deposit slip that was produced by Mr. Alza in response to a discovery request that was propounded by UDI where UDI asked the Alzas to produce all of their bank and other documents pertaining to their transactions with UDI. But he now says it's an error, right, that he just gathered up all the papers on his desk and sent them over to you and it doesn't relate to anything in particular? It could have come from somewhere else. Well, Your Honors, with all due respect on that point, where's the evidence that that's the fact? All we have is a ---- Don't you need the evidence that that was money, that represents money from UDI? I mean, my problem with this is it's a different amount, $330,000, than what UDI claims to have given. And it's 12 months later that UDI gave the money. And the only thing you have to explain that is one entry, which is completely, to me, ambiguous. Well, I guess let me try and answer both questions, the first pertaining to the $330,000, where's our evidence on that? Well, our evidence is that Mr. Alza, again, produced that in response to a discovery request. So that is, in essence, him admitting that this transaction was related to UDI. Now, as to the other point on the ---- But why doesn't UDI have anything on that? Well, Your Honor, and that's a very good question, and there's a good answer for it. And the answer is that, as was explained at the oral argument, UDI, a lot of its dealings were in cash. And also, as we know from Mr. Alza's admissions, some of the dealings that UDI had involved payments from new investors directly. But what about with the cash deal? You know, under Federal rules, you do anything over $10,000. I mean, there's all kinds of reporting requirements if you're putting in more than $10,000 in cash into a Federal institution. So if that story were to hang together, there would be records that it was a cash transaction. It just seems ---- I mean, this may well be from UDI. I don't know, but it just seems odd that we have a deposit slip, and you can't connect it to your client. That's a lot of money. No, I understand, Your Honor. And it is connected to the client. Okay. And it's connected by the accounting records that Mr. Arnold has in his affidavit gone through. He went through all of UDI's accounting records. And in his affidavit, what he explained was, based on his analysis, the total amount that the Alzas invested and the total amount that was paid back to them. And it wasn't just his affidavit that was submitted at the summary judgment stage. In fact, UDI submitted a stack of its accounting records, which show the backup for where Mr. Arnold came up with his analysis on this. But again, UDI admits there is no cancelled check from UDI to Alza for $330,000. But again ---- So are you saying ---- but somebody would know, for example, it seems like an actual live person could say, well, 33 times I made, you know, or 45 times I made $9,999 transactions, therefore I didn't have to report it, and they were in cash. Or this was all in cash, and then it landed in the bank, and then it would come out of UDI's cash reserves in its accounting. That's what's kind of missing. I'm having trouble understanding. There's a gap on both sides, and I guess the question we have to decide is at summary judgment, is that gap such that you can win because they can't refute it, or do you have to do more? So maybe you could address that question. Sure, sure. And I guess in following up on the cash issue, this doesn't have to be a cash transaction. Alza's admitted that they received a payment of $600,000 directly from Mr. Hoover, a new investor in UDI. Was he a new investor? What's the record tell us about the transaction between Hoover and UDI? Was it investment? Alza's brief seems to suggest it was a purchase of assets. Your Honor, my understanding is that it was an investment. Mr. Hoover had an ongoing lending relationship with UDI. What's the record tell us? Your Honor, I'm going to have to apologize. I can't answer that question. But we certainly, on summary judgment, Mr. Arnold did submit all of UDI's accounting records that pertain to the Alza matter. Would it make a difference as to whether Hoover was an investor or a purchaser of assets in advancing the $600,000 to Alza? No, Your Honor. I mean, either way, it's a payment to Alza. They're getting paid back money that they put into UDI. They were getting paid back either way, regardless of how we characterize it. But is it a transfer from UDI? I mean, that's what's key for purposes of the Clawback. It is because when they received the $600,000, they had to surrender promissory notes that were payable from UDI to the Alzas. So it was, but the money didn't come directly from UDI. It just went from Mr. Hoover to the Alzas. And is there a link between Alza and Hoover? What's the link, I mean, between UDI and Hoover? What's the link or what does the record show about UDI's interest in Hoover's money? As I mentioned, there was an ongoing relationship, lending relationship between Hoover and UDI. And unfortunately, I don't know the ins and outs of all that, Your Honor. And I apologize for that. I didn't expect to be addressing that today. I just don't know the answer to that. And I do apologize. But we can certainly get information to the court if the court would like that on some kind of a supplemental brief. But I guess the point I was trying to make with the $600,000 was this was not uncommon with UDI to have new investors pay old investors directly through these payments, which would make sense as to why UDI wouldn't have a canceled check showing that it paid this money directly to the Alzas. May I also ask you about this father-son issue, Joe Joseph issue? The records that I believe are part of the UDI's original summary statement indicates that there are two different summary statements, one for Joe Alza and one for Joseph Alza. And apparently the checks were written, some to Joe and some to Joseph, and there doesn't seem to be a dispute that the son was called Joseph and the father Joe. And these checks all went into the same bank account. But as I read our precedent, that doesn't necessarily make a difference. What is important for purposes of who is a transferee is whether the entity, the transferee, had legal authority over the money. And I was looking for some evidence that Joe, the father, had legal authority over the money that was in a check addressed to Joseph, the son. Can you address that? Well, Your Honor, I think where we get that is from Mr. Alza's deposition. He was asked about these specific checks, there were four of them, and he was asked, you know, what's the story with the checks? He said, well, he admitted that he endorsed these checks and they went into his bank account. So that was a transfer to him, to Mr. Alza. That doesn't give him legal control over the money, it just maybe he was fraudulently signing his name on it. But that doesn't mean that it's his money, right? Well, it went into his account and he had sole control over it. It was a transfer to him. Is that accurate? Isn't there evidence in the record to suggest that the son had some control or ability to draw on the account as well? I'm unaware of any evidence on that point, Your Honor, other than arguments that we've heard that they don't know that it's possible that the son had signing authority on the account. But I'm unaware of any evidence on that. You point out that Alza could have easily put in a declaration saying that the son had some access and didn't do so. But does that relieve you of your initial cellotex burden to establish that the father, in fact, had dominion over the account? No, it doesn't. But we've met that burden by his deposition testimony that said it was his account and he had control over the account. Well, yeah, I'm looking at these cases, some of which I don't think you cited, but we said we used the dominion test. We don't use the control test. We rejected the Eleventh Circuit test that it depends on who in reality controls the funds in question, which is what you seem to be arguing. And said we're just looking on who has a legal right to control the money. And I guess the concern I have is, you know, there's a case in the using the same test in the Seventh Circuit, I believe, where the bank got the money. It says we're a conduit, but they put the money in their account. But the legal right to the money belonged in some third party, so the bank was not the transferee. So I guess I'm still looking for something showing not just that Joe had control over his bank account, but that, in fact, he had the legal right to use the money as he saw fit. Your Honor, my time is up, but if it's okay, I'll answer the question. You know, what we have, again, what we have in the record is a complete absence of any evidence from the other side. UDI does not know what Mr. Alza did or did not do with the funds once he got them from UDI. What UDI knows is that they were paid to Mr. Alza. And once they went into his bank account, he had control over them. And whatever he did was a side point. And I guess what I would say is, at the end of the day, if that is an issue, I know that there's been arguments in the Alza's brief that that would reduce this amount, the damage amount, by, I believe, $149,000. In fact, it should only be $49,000 because the way UDI has done its accounting is to show that the $100,000 that the $49,000 interest was paid on came from the Alza's. If the position is that it actually came from their son, then we would reduce the initial investment amount by the $100,000, too. So it would only reduce the amount of UDI's judgment by $49,000. Thank you. Thank you. Your Honor, I would reemphasize that this is a case of extravagant inferences that a lot of people are trying to draw from very little evidence. Once again, it's the plaintiff that bears the initial burden of establishing the facts on summary judgment in this case. I would add in particular that the deposition that is part of the record in the case taken of the defendant does include his expressed testimony that he denied any significant profit from this transaction. Moreover, in the same deposition, which is part of the record in the case, he asserted that he was a partner or at least in, quote, I'm sorry, he was not a partner. He was in business with his son in respect of various activities. So therefore, it is a perfectly plausible inference from that that they would share monies in the bank account. And I think that once again, the statement that Mr. Arnold's declaration deals with these issues is simply insufficient. The record is insufficient to justify a summary judgment based upon the circumstances here. It might have been better for everybody if a lot of parties had more directly dealt with the issues. But as it stands, the record is insufficient to sustain this, particularly in reference to the existence of the Ponzi scheme, in existence of the fact that any payment was made in furtherance of a Ponzi scheme if there was one, and in particular in reference to this single transaction for $330,000 or $350,000 that is apparently justified only by one line of a book entry in UDI's books and records that is not tied in any way by any independent evidence to UDI. Thank you. Thank you. The case was started and submitted, and I thank both counsel for your arguments this morning. Thank you, Your Honors.
judges: McKeown, Ikuta, Selna